RECEIPT #_____
AMOUNT $_____
SUMMONS ISSUED_____
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE_____

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SIMON A. BULKO, On Behalf of Himself And All Others Similarly Situated, | CIVIL ACTION NO. |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| v. | MAGISTRATE JUDGE Alexander |
| BOSTON COMMUNICATIONS GROUP, INC., KAREN A. WALKER, and EDWARD H. SNOWDEN, | **JURY TRIAL DEMANDED** |
| Defendants. | |

# 04-10081DPW

Plaintiff, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the public documents and announcements made by Defendants, and Securities and Exchange Commission ("SEC") filings, and press releases regarding Boston Communications Group, Inc. ("Boston Communications" or the "Company"), alleges, for his complaint, as follows:

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of purchasers of Boston Communications securities between April 16, 2003 to July 16, 2003, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Boston Communications provides services to the wireless industry, including real-time

subscriber management services through a combination of proprietary software applications, a

carrier-class-hosted environment, a voice resource network and a service and support organization.

Boston Communications' stock is traded on the NASDAQ National Market ("NASDAQ") under the

symbol "BCGI." Throughout the Class Period, Boston Communications made numerous false and

misleading public statements concerning its relationship with Verizon Wireless, Inc. ("Verizon"), the

Company's biggest client for billing services. During this time Defendants sold over $1 million worth of

their shares of Boston Communications stock. When news that Verizon would be creating its own

internal billing system rather than continuing to use Boston Communications for billing services was

revealed on July 16, 2003, the price of Boston Communications stock dropped more than 40% from

$21.16 per share on July 16, 2003 to close at $12.70 per share on July 17, 2003, on extraordinarily

heavy volume of over 12 million shares.

## JURISDICTION AND VENUE

3.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the

Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated under Section 10(b) by

the SEC [17 C.F.R. § 240.10b-5].

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

§§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

5.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28

U.S.C. § 1391(b). Many of the acts charged herein, including the preparation and dissemination of

materially false and misleading information, occurred in substantial part in this District and Boston

Communications conducts business in this District.

6.    In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

7.    Plaintiff Simon Bulko, as set forth in the accompanying certification incorporated by reference herein, purchased the common stock of Boston Communications at artificially inflated prices during the Class Period and has been damaged thereby.

8.    Defendant Boston Communications is a corporation organized under the laws of Massachusetts with its principal executive offices located at 100 Sylvan Road, Woburn, Massachusetts 01801.

9.    Defendant Edward H. Snowden ("Snowden") is, and was during the Class Period, Boston Communications' President and Chief Executive Officer and a Director.

10.    Defendant Karen A. Walker ("Walker") is, and was during the Class Period, Boston Communications' Chief Financial Officer.

11.    Defendants Snowden and Walker, together, are referred to herein as the "Individual Defendants."

12.    During the Class Period, the Individual Defendants, as senior executive officers and/or a director of Boston Communications, were privy to confidential and proprietary information concerning Boston Communications, its operations, finances, financial condition, present and future business prospects. The Individual Defendants also had access to material, adverse, non-public information concerning Boston Communications as discussed in detail below. Because of their

3

positions with Boston Communications, the Individual Defendants had access to non-public information about its business, finances, products, markets, and present and future business prospects via access to internal corporate documents, conversations, and communications with other corporate officers and employees, attendance at management and board of directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

13.    The Individual Defendants are liable as direct participants in, and as co-conspirators with respect to the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or a director were "controlling persons" within the meaning of Section 20 of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Boston Communications' business.

14.    The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases, and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

4

15.    As senior executive officers and/or a director and as controlling persons of a publicly-traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and which was traded on the NASDAQ and governed by the federal securities laws, the Individual Defendants had a duty to disseminate promptly accurate and truthful information with respect to Boston Communications' financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Boston Communications' common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

16.    The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Boston Communications' common stock by disseminating materially false and misleading statements and/or concealing material, adverse facts. The scheme: (i) deceived the investing public regarding Boston Communications' business, operations, and management and the intrinsic value of Boston Communications common stock; (ii) permitted the Individual Defendants to sell more than $1 million of Boston Communications' common stock at artificially inflated prices; and (iii) caused Plaintiff and the other members of the Class to purchase Boston Communications' common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

17.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all those who purchased the securities of Boston Communications during

the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are

Defendants, the officers and directors of the Company during the Class Period, members of their

immediate families and their legal representatives, heirs, successors or assigns and any entity in which

Defendants have or had a controlling interest.

18.     The members of the Class are so numerous that joinder of all members is impracticable.

Throughout the Class Period, Boston Communications common shares were actively traded on the

NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only

be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of

members in the proposed Class. Record owners and other members of the Class may be identified

from records maintained by Boston Communications or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities

class actions.

19.     Plaintiff's claims are typical of the claims of the Class, as all Class members are similarly

affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

20.     Plaintiff will fairly and adequately protect the interests of the Class and has retained

counsel competent and experienced in class and securities litigation.

21.     Common questions of law and fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class. Among the questions

of law and fact common to the Class are:

> a.     whether the federal securities laws were violated by Defendants' acts as alleged
> herein;

b.    whether statements made by Defendants to the investing public during the Class

Period misrepresented material facts about the business and operations of

Boston Communications; and

c.    to what extent the members of the Class have sustained damages and the

proper measure of damages.

22.    A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

damages suffered by individual Class members may be relatively small, the expense and burden of

individual litigation make it impossible for members of the Class to individually redress the wrongs done

to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

23.    Boston Communications provides services to the wireless industry, including real-time

subscriber management services through a combination of proprietary software applications, a

carrier-class-hosted environment, a voice resource network and a service and support organization.  Its

operating segments consist of billing and transaction processing services, prepaid services and roaming

systems.

24.    Boston Communications' financial results for the year 2002 were published in the

Company's Report on Form 10-K filed with the SEC on or about March 27, 2003.  The Company

indicated that Verizon, Boston Communications' biggest client for billing services, accounted for almost

half of Boston Communications' revenue in 2002.  Thus far in 2003, Verizon has accounted for a little

more than half of Boston Communications revenue.

25.    This class action concerns Defendants' materially false and misleading statements during the Class Period. Specifically, Defendants misrepresented that: (1) Boston Communications was aware that Verizon would not be renewing its billing services contract with Boston Communications because Verizon was creating its own internal billing system instead of continuing to use Boston Communications for billing services; and (2) that Boston Communications was aware that Verizon's decision to create its own internal billing system would lead to a significant loss of revenue for Boston Communications.

## MATERIALLY FALSE AND MISLEADING
## STATEMENTS ISSUED DURING THE CLASS PERIOD

26.    The Class Period begins on April 16, 2003. On that date, the Company issued a press release, which stated in pertinent part:

> **Billing and Transaction Processing Services, which include the Company's Prepaid Wireless Services, Voyager Billing and Customer Care, and Payment Services, generated record revenues of $21.1 million in the first quarter of 2003**, a 74% increase over the first quarter of 2002 and an 18% increase over the 2002 fourth quarter. The increase in revenues, which have a corresponding low incremental cost, contributed to higher gross margins on Billing and Transaction Processing Services Revenues of 76%, compared to 68% in the first quarter of 2002 and 73% in the fourth quarter of 2002. The higher than expected revenues and corresponding gross margins were principally due to very strong net prepaid subscriber additions of 455,000 for the quarter. Total prepaid subscribers on the platform are now 3.35 million, a 69% increase over March 31, 2002.

> **"Our outstanding performance for the quarter reflects the solid positioning of our Billing and Transaction Processing Services business.** The strength of our prepaid subscriber additions for the quarter continues to validate our carrier customers' success in selling to the under-penetrated youth and budget conscious segments

with attractive prepaid customer propositions that are based on solid carrier economics. This year in particular, gross additions across most all of our carrier customer programs continued with nice momentum well beyond the typical end of holiday promotions. More and more, our carriers are offering a rich consumer experience with postpaid-like features using our real-time rating, billing, and customer care solutions that are generating new growth while reducing operational costs and churn," commented E. Y. Snowden, President and CEO.

* * *

"Our tremendous growth in first quarter subscriber additions was the key factor in our earnings growing more than 60% compared to the fourth quarter of 2002. Although we are now entering the seasonally slower second and third quarters, we believe that our carrier's commitment to prepaid and our business model and value proposition will continue to position bcgi for growth and healthy profits. As a result, we are raising our annual 2003 earnings guidance," commented Karen A. Walker, Chief Financial Officer.

The Company is raising its 2003 GAAP earnings to $0.78 to $0.80 per share, which includes an estimate of $0.12 per share in legal costs primarily to defend the Freedom Wireless lawsuit. This guidance is more than four times higher than the Company's 2002 annual GAAP earnings of $0.19 per share. For the second quarter of 2003, the Company anticipates GAAP earnings of $0.19 to $0.20 per share, which includes $0.03 per share in estimated legal costs. "Our business model continues to be validated and our overall financial position, with $48.6 million in cash and investments and no debt, gives us the strength to capitalize on weaknesses across the telecommunications industry. This is evidenced by our recent building purchase that will initially house our second data center and our ability to continue to attract and retain top talent across our organization," commented Ms. Walker.

Mr. Snowden concluded, "We are obviously very pleased with our performance for the quarter and as a leader in real-time billing and transaction processing services, we feel that we are well positioned to continue to execute on our business plan. By serving both the largest national carriers and the smaller regional U.S. carriers who have just begun to gain momentum with their prepaid offerings, we look forward to continuing to competently provide them the best platform to

9

demonstrate competitive success in a challenging industry." (Emphasis
added).

27.     Boston Communications' financial results for the first quarter of 2003, the period ending

March 31, 2003, were repeated in the Company's Report on Form 10-Q filed with the SEC on or

about May 15, 2003. The Company's Form 10-Q was signed by Defendant Walker. In the Form

10-Q, the Company stated in pertinent part:

> Our Verizon Wireless prepaid wireless services contract and
> certain other contracts expire in 2003 and beyond. While we expect to
> renew these contracts, when and if each of the contracts is renewed,
> some contractual rates per minute may be lower than in previous years
> and at lower rates than we have estimated. These contracts are not
> exclusive and therefore do not prevent our customers from using
> competitors' billing and transaction processing platforms.

28.     On June 11, 2003, the Company met with Raymond James and Associates and its

analyst Mike Latimore. At that meeting and as reported in Mike Latimore's June 12, 2003 report, the

Company stated to Raymond James and Associates and its analyst Mike Latimore that it would not

comment on its on-going negotiations with Verizon. The Company, however, did inform Raymond

James and Associates and its analyst Mike Latimore that Verizon was "happy with [Boston

Communications] and the outsourcing solution."

29.     The statements referenced above in ¶¶ 26-28 were each materially false and misleading

because they failed to disclose and misrepresented the following material, adverse facts which were

known to Defendants or recklessly disregarded by them: (1) Boston Communications was aware that

Verizon would not be renewing its billing services contract with Boston Communications because

Verizon was creating its own internal billing system instead of continuing to use Boston Communications

10

for billing services; and (2) Boston Communications was aware that Verizon's decision to create its

own internal billing system would lead to a significant loss of revenue for Boston Communications.

## THE TRUTH EMERGES

30.    The Class Period ends on July 16, 2003.  On that date, after the market had closed,

Boston Communications issued a press release announcing the truth about its contract negotiations with

Verizon.  The Company stated, in pertinent part, the following:

> Verizon Wireless Contract Renewal Update
>
> As the Company has stated in its public disclosures, its contract
> with Verizon Wireless is scheduled, according to its terms, to be
> renegotiated in 2003.  The Company is currently in contract discussions
> with Verizon Wireless.  The terms and conditions, including the length
> of the contract and pricing have not yet been determined.  **Verizon
> Wireless has also requested that bcgi  provide support services
> to assist Verizon Wireless in testing its own internal prepaid
> platform in 2004 which could potentially displace prepay services
> currently being provided by bcgi.**  None of the Company's contracts
> are exclusive and its carrier customers have and continue to use and/or
> test competing products in certain markets.  The Company believes
> bcgi's real-time transaction processing and support solutions best meet
> the technology, functionality and profitability goals of its carriers today,
> and in the future.  (Emphasis added).

31.    On July 17, 2003, Bloomberg reported on the Company's July 16, 2003 conference

call that followed its press release.  Bloomberg also reported that Defendant Snowden stated in the

conference call that on July 11, 2003 Verizon told Boston Communications that it was creating its own

internal billing system instead of continuing to use Boston Communications for billing services.

32.    The market reacted swiftly to this news, with the Company's stock falling 40%, or

$8.46 from a closing price of $21.16 per share on July 16, 2003 to close at $12.70 per share on July

17, 2003, on extraordinarily heavy volume of over 12 million shares.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

33.    The market for Boston Communications' securities was open, well-developed and

efficient at all relevant times. As a result of these materially false and misleading statements and failures

to disclose, Boston Communications' common stock traded at artificially inflated prices during the

Class Period. Plaintiff and the other members of the Class purchased or otherwise acquired Boston

Communications securities relying upon the integrity of the market price of Boston Communications'

securities and market information relating to Boston Communications, and have been damaged thereby.

34.    During the Class Period, Defendants materially misled the investing public, thereby

inflating the price of Boston Communications' common stock, by publicly issuing false and misleading

statements and omitting to disclose material facts necessary to make Defendants' statements, as set

forth herein, not false and misleading. Said statements and omissions were materially false and

misleading in that they failed to disclose material, adverse information and misrepresented the truth

about the Company, its business and operations, as alleged herein.

35.    At all relevant times, the material misrepresentations and omissions particularized in this

Complaint directly or proximately caused or were a substantial contributing cause of the damages

sustained by Plaintiff and the other members of the Class. As described herein, during the Class Period

Defendants made or caused to be made a series of materially false or misleading statements about

Boston Communications' business, prospects and operations. These material misstatements and

omissions had the cause and effect of creating in the market an unrealistically positive assessment of

Boston Communications and its business, prospects and operations, thus causing the Company's

12

securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and the other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

**SCIENTER**

36.    As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Boston Communications, their control over, and/or receipt of information of Boston Communications' allegedly materially misleading misstatements and/or their associations with the Company that made them privy to confidential proprietary information concerning Boston Communications, participated in the fraudulent scheme alleged.

37.    During the Class Period, Defendants Snowden and Walker received proceeds of $1,349,813 for shares sold during the Class Period. Defendant Snowden sold 56,100 shares for proceeds of $985,921 during the Class Period. Defendant Walker sold 19,734 shares for proceeds of $363,892 during the Class Period. These insider sales are probative of Defendants' scienter.

13

**Applicability Of Presumption**
**Of Reliance: Fraud-On-The-Market Doctrine**

38.    At all relevant times, the market for Boston Communications' securities was an efficient

market for the following reasons, among others:

        a.    Boston Communications' stock met the requirements for listing, and was listed

           and actively traded on the NASDAQ, a highly efficient and automated market;

        b.    As a regulated issuer, Boston Communications filed periodic public reports with

           the SEC;

        c.    Boston Communications regularly communicated with public investors via

           established market communication mechanisms, including through regular

           disseminations of press releases on the national circuits of major newswire

           services and through other wide-ranging public disclosures, such as

           communications with the financial press and other similar reporting services; and

        d.    Boston Communications was followed by several securities analysts employed

           by major brokerage firms who wrote reports that were distributed to the sales

           force and certain customers of their respective brokerage firms.  Each of these

           reports was publicly available and entered the public marketplace.

39.    As a result of the foregoing, the market for Boston Communications' securities

promptly digested current information regarding Boston Communications from all publicly available

sources and reflected such information in Boston Communications' stock price.  Under these

circumstances, all purchasers of Boston Communications' securities during the Class Period suffered

similar injury through their purchase of Boston Communications' securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

40.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Boston Communications who knew that statement was false when made.

## COUNT I

### Violation Of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

41.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42.     Throughout the Class Period, Boston Communications and the Individual Defendants, carried out a plan, scheme, and course of conduct that was intended to and did: (i) deceive the investing

15

public, including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Boston Communications' securities; and (iii) cause Plaintiff and the other members of the Class to purchase Boston Communications' securities at artificially inflated prices. In furtherance of this unlawful scheme and course of conduct, Defendants took the actions set forth herein.

43.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Boston Communications' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

44.    In addition to the duties of full disclosure imposed on Defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. §§ 210.01 et seq.) and Regulation S-K (17 C.F.R. §§ 229.10 et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition, and earnings so that the market price of the Company's securities would be based on truthful, complete, and accurate information.

45.    Boston Communications and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails,

16

engaged and participated in a continuous course of conduct to conceal adverse, material information about the business, operations, and future prospects of Boston Communications as specified herein.

46.    Defendants employed devices, schemes and artifices to defraud, while in possession of material, adverse, non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Boston Communications' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Boston Communications and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Boston Communications' securities during the Class Period.

47.    The Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level officers and/or a director at the Company during the Class Period; (ii) the Individual Defendants were privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; and (iii) the Individual Defendants were aware of the Company's dissemination of information to the investing public that they knew or recklessly disregarded was materially false and misleading.

48.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect

17

of concealing Boston Communications' operating condition and future business prospects from the

investing public and supporting the artificially inflated price of its securities. As demonstrated by

Defendants' overstatements and misstatements of the Company's business, operations and earnings

throughout the Class Period, Defendants, if they did not have actual knowledge of the

misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by

deliberately refraining from taking those steps necessary to discover whether those statements were

false or misleading.

49.    As a result of the dissemination of the materially false and misleading information and

failure to disclose material facts, as set forth above, the market price of Boston Communications'

securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of

Boston Communications' publicly-traded securities were artificially inflated, and relying directly or

indirectly on the false and misleading statements made by Defendants, or upon the integrity of the

market in which the securities trade, and/or on the absence of material, adverse information that was

known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants

during the Class Period, Plaintiff and the other members of the Class acquired Boston Communications

securities during the Class Period at artificially high prices and were damaged thereby.

50.    At the time of said misrepresentations and omissions, Plaintiff and the other members of

the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other

members of the Class and the marketplace known of the true financial condition and business prospects

of Boston Communications, which were not disclosed by Defendants, Plaintiff and the other members

of the Class would not have purchased or otherwise acquired their Boston Communications securities,

18

or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

51.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**COUNT II**

**Violation Of Section 20(a) Of
The Exchange Act Against The Individual Defendants**

53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Boston Communications within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be

19

misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

56.     As set forth above, Boston Communications and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions each as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Boston Communications and the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

20

D.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  January 14, 2004

**SHAPIRO HABER & URMY LLP**

Theodore Hess-Mahan BBO #557109
75 State Street
Boston, Massachussetts 02109
(617) 439-3939
(617) 439-0134 (facsimile)

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
Sandy A. Liebhard
Joseph R. Seidman, Jr.
10 East 40th Street, 22nd Floor
New York, NY 10016
(212) 779-1414
(212) 779-3218 (facsimile)

**Counsel for Plaintiff**